DUDLEY HAYCRAFT *v.* NANCY HAYCRAFT

[No. 1-677A130. Filed April 25, 1978.]

---

*Rudy & Ward*, of New Albany, for appellant.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Defendant-appellant Dudley Haycraft (Dudley) appeals from an adverse judgment in the trial court in a civil contempt proceeding brought against Dudley by plaintiff-appellee Nancy Haycraft (Nancy) because of Dudley's failure to comply with a court order, wherein Dudley had been ordered to pay $35.00 per week for the support of Dudley's two minor children who were living with Nancy, his ex-wife.

## FACTS

Dudley and Nancy were divorced on June 27, 1969. The divorce decree awarded custody of the parties' two minor children to Nancy and ordered Dudley to pay child support in the amount of $35.00 per week.

In January 1974 Dudley and Nancy entered into a verbal agreement which was never approved by the court or merged into the court's support order. In that January 1974 verbal agreement between the parties, Dudley agreed to pay Nancy $40.00 per week for the support of the children. Nancy's testimony indicates that the parties made the January 1974 agreement so that they could avoid the time and expense that would be required in going back to court and having the order for support modified.

Dudley continued to pay $40.00 per week for child support until the second week of September 1976. At that time, with the consent of both Dudley and Nancy, the parties' son began living with Dudley. From that time onward, Dudley ceased making support payments. Dudley testified that he and Nancy made another out-of-court, verbal agreement, wherein the parties agreed that if Dudley would assume full custody of the son, then Nancy would waive any right to future sup-

port payments for both children. Nancy denied that she had entered into such an agreement.

In November 1976 Nancy filed a petition for citation against Dudley, wherein, she petitioned the trial court to hold Dudley in contempt of court because of his failure to make support payments, since the second week of September 1976, and she sought the arrearages in support payments and attorney's fees.

The trial court found Dudley to be in contempt for his failure to comply with the court's decree, and the court ordered Dudley to pay arrearages at the rate of $17.50 (one-half of the original support order) per week and in the total amount of $367.50. The court modified its original decree by awarding custody of the parties' son to Dudley, and by ordering Dudley to pay $17.50 per week for the support of his daughter who was living with Nancy. Dudley was also ordered to pay Nancy's attorney's fees in the amount of $75.00.

## ISSUES

The issues which have been presented to this court for review are as follows:

### Issue One

Is the trial court's judgment contrary to law in that it sanctions the use of contempt proceedings as a means of enforcing verbal out-of-court agreements which are made by parties to dissolution of marriage actions, but which are not approved by the court or merged into any order of the court?

### Issue Two

Is the trial court's judgment contrary to law in that, in holding Dudley Haycraft in contempt of court for failing and refusing to obey the court's support order of June 27, 1969, and in ordering him to pay an arrearage of $367.50 to Nancy Haycraft, the court refused to give Dudley credit for approximately 139 consecutive weekly support overpayments of $5.00 each, which overpayments were in excess of the weekly payments he was ordered to make under the terms of the court's order of June 27, 1969?

## DISCUSSION AND DECISION

*Issue One*

Dudley contends that the trial court erred in using its contempt power to enforce an out-of-court agreement between the parties, which was neither approved by the court nor merged into the court's original order.

We do not agree that the trial court enforced the out-of-court agreement between the parties. The evidence clearly shows that in its decree of June 27, 1969 the court ordered Dudley to pay $35.00 per week in child support payments. That June 27, 1969 order was never modified, until the court's judgment of February 4, 1977 was entered, as the result of the contempt proceeding brought by Nancy against Dudley. Until that original support order of June 27, 1969 had been modified by the trial court, Dudley was legally obligated to comply with the terms of that order,[1] regardless of any contrary agreement between the parties.[2]

In the February 4, 1977 judgment the trial court ordered Dudley to pay arrearages at the rate of $17.50 per week, this is, one-half of the amount which Dudley was legally obligated to pay.[3] Since the trial court ordered Dudley to pay only one-half of what he was legally obligated to pay under the terms of the original support order, it is obvious that the trial court did not enforce the extra-judicial oral agreement into which the parties had entered, an agreement which provid-

---

1. See *Stitle v. Stitle* (1964), 245 Ind. 168, 197 N.E.2d 174, and *Biedron v. Biedron* (1958), 128 Ind. App. 299, 148 N.E.2d 209.

2. See *Grace v. Quigg* (1971), 150 Ind. App. 371, 276 N.E.2d 594.

3. We note that the trial court was without power to make the February 4, 1977 modification of its original support order retroactively effective. In *Biedron v. Biedron, supra,* at 213, this court said:

"In this state after support installments have accrued, the court is without power to reduce, annul or vacate such orders retrospectively, and therefore the court committed error in attempting to do so." (Citations omitted)

We point out, however, that Nancy has submitted no appellee's brief and has alleged no cross errors concerning the trial court's judgment. She has, therefore, waived any cross error which she might otherwise have raised. See *Baxter v. Baxter* (1964), 138 Ind. App. 24, 195 N.E.2d 877 and Ind. Rules of Procedure, Trial Rule 59(D).

ed for a payment in excess of the amount required under the original support order. Therefore, the trial court's judgment is not contrary to law.

*Issue Two*

Dudley contends that the trial court's judgment, which held Dudley in contempt of court for failing to obey the court's order of June 27, 1969, and which ordered him to pay an arrearage of $367.50, is contrary to law in that it does not give Dudley credit for approximately 139 consecutive weekly overpayments of $5.00 each which is $695.00.

We are of the opinion that our Supreme Court's holding in *Stitle v. Stitle, supra,* is dispositive of the overpayment issue raised by Dudley in the case at bar. In 197 N.E.2d at 182-3 of the *Stitle, supra,* opinion, wherein a divorced father ceased making child support payments for his son, without prior approval from the court or modification of the court's support order, upon the mistaken notion that the son was emancipated, our Supreme Court said:

"... appellant was required to make the payments in the *manner, amount* and at the *times* required by the support order embodied in the divorce decree, *at least until such order was modified or set aside.*" (Our emphasis)

In the case at bar Dudley was required by the June 27, 1969 support order to pay $35.00 (amount) per week (specified times) to the clerk of the court (manner) to be distributed to Nancy for the benefit of the children. Dudley's alleged overpayments complied with neither the amount nor time requirements set forth in the original order, and were, therefore, properly not considered by the trial court in the February 4, 1977 entry of judgment in the case at bar.

Since Dudley and Nancy had no power to modify the terms of the original support order by means of an extrajudicial agreement, any excess payment made under that supposed agreement had to be considered a gratuity or at least a voluntary contribution for the support of the children, and not a prepayment of future support obligations. If non court approved prepayments, such as those which Dudley suggests, were to be permitted, it would be possible for a parent, who is obligated to pay support, to build up a substan-

tial credit, then suddenly refuse to make support payments for several weeks, months, or even years, thus thwarting the court's purpose in setting the payments at certain specified intervals, that of providing regular, uninterrupted income for the benefit of that parent's children, who are in the custody of another. The regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments. We hold that the court did not err in failing to consider the $5.00 overpayments made by Dudley, nor in holding Dudley in contempt of court.

Dudley contends that the trial court abused its discretion in ordering him to pay attorney's fees incurred by Nancy in bringing this contempt proceeding in that the court's decision was based primarily upon the fact that Dudley was found to be in contempt of court, and not upon evidence concerning the parties' respective financial condition. We do not agree.

A court, which has been statutorily empowered to award attorney's fees, may award reasonable attorney's fees to one party, even where no evidence of the parties' respective financial condition has been presented. *Cox v. Cox* (1975), 163 Ind. App. 172, 322 N.E.2d 395. Therefore, we hold that the court did not abuse its discretion in failing to base its decision of whether or not to award attorney's fees solely upon the parties' respective financial status.

Also, we hold that it is proper for a court, as in the case at bar, to consider it to be a fact of primary import that the respondent in a contempt proceeding was actually in contempt, and that it was the respondent's actions which precipitated the need for such a contempt proceeding.

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 375 N.E.2d 252.